UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NICHOLAS BLUE,<br><br>                       Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>                       Defendant. | Case No. C14-5962-MJP-BAT<br><br>**REPORT AND RECOMMENDATION** |

Nicholas Blue appeals the ALJ's written decision finding him not disabled. He contends the ALJ misevaluated the lay testimony, school records, receipt of a state funded caregiver, and the opinions of the state agency medical consultants, and that the Court should therefore reverse the Commissioner's final decision and remand the case for an award of benefits. Dkt. 12 at 1-2. As discussed below, the ALJ did not commit reversible error in evaluating the lay testimony, and receipt of caregiver services. However, the ALJ harmfully erred in determining Mr. Blue's Residual Functional Capacity ("RFC") by failing to account for all of the limitations contained in his school records and assessed by the agency medical consultants. Because the record does not establish a clear entitlement to benefits, the ALJ's errors do not compel an award of benefits. The Court accordingly recommends **REVERSING** the Commissioner's final decision and

REPORT AND RECOMMENDATION - 1

**REMANDING** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Mr. Blue is currently 21years old, has no work experience and as of May 2013, was working on completing high school. Tr. 24, 44, 264. In December 2011, he applied for benefits, alleging disability since January 1998 (age three). Tr. 75. His applications were denied initially and on reconsideration. Tr. 80, 89. At the April 22, 2013, hearing before the ALJ, Mr. Blue amended his alleged onset date to his eighteenth birthday, January 17, 2012. Tr. 17. The ALJ found Mr. Blue not disabled, and as the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision. Tr. 1-7.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found at steps one through three that Mr. Blue last worked in December 2011; that attention deficit hyperactivity disorder, bipolar disorder II, generalized anxiety disorder, Asperger's syndrome, and cannabis abuse were severe impairments; and that none of these impairments met the Lisitngs.[2] Tr. 19-21. With these impairments, the ALJ found Mr. Blue had the RFC to perform work at all exertional levels with the following mental functional limitations: He could understand, remember, and carry out simple and detailed repetitive tasks and work in a stable, predictable workplace setting where contact with the general public was not an essential element but incidental contact was not precluded; and he should not perform work with tandem tasks or tasks requiring cooperative team effort. Tr. 21. At step four, the ALJ found Mr. Blue had no past relevant work. However, at step five, the ALJ found Mr. Blue not disabled based on a Vocational Expert's (VE) testimony

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

that there were jobs in the national economy that he could perform.  Tr.  25.

**DISCUSSION**

**A.     Lay Witness Evidence**

Mr. Blue's mother, Dawn McClintock, and grandfather, Donald McClintock, provided lay witness testimony.  An ALJ must consider lay witness testimony concerning a claimant's ability to work.  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay witness testimony includes evidence of the claimant's symptoms or the impact of impairment on claimant's ability to work.  *Id*.  The ALJ must provide a germane reason to disregard a lay witnesses testimony.  *Turner v. Comm'r of Soc.Sec. Admin.*, 613 F. 3d 1217, 1224 (9th Cir. 2010).

Ms. McClintock completed a written questionnaire in October 2012 and testified at the hearing before the ALJ.  Tr.  267-72, 61-68.  In the 2012 questionnaire, she stated Mr. Blue isolated himself and spent much of his time alone, that he could not remember simple tasks, had difficulty sitting still, and could be anxious, violent, upset, and depressed.  Tr.  267-9.  She also noted he received assistance with shopping, cleaning, cooking, medical appointments, and reminders for personal care, and had trouble staying on task to completion.  Tr. 270-1.   At the hearing, she testified Mr. Blue had poor social skills, rocked to calm himself, could not manage money, pay bills, make good food choices, do laundry, or practice good hygiene.  Tr.  63-4.  She described Mr. Blue's anger and frustration over the constant reminders he needed to perform daily functions, such as teeth brushing.  Tr.  65.  She also acknowledged his marijuana use and attempts to remain clean.  Tr.  65-67.  Ms. McClintock believed her son could not live independently.  Tr.  64.

Mr. Blue's grandfather provided similar testimony in an October 2012 questionnaire.  Tr.

REPORT AND RECOMMENDATION - 3

1   273-8.  He stated Mr. Blue was very distressed and depressed, rocked constantly and could be
2   very combative; that he was withdrawn, isolated, and paranoid that people were staring or talking
3   about him; and that he had difficulties with memory, focus, and responding to change.  Tr.  273-
4   7.  Mr. McClintock also believed that Mr. Blue's mental health issues had worsened over the
5   years.  Tr.  278.

6   　　　　The ALJ stated "I accord some weight to [these] lay statements in finding some degree of
7   cognitive and social limits.  However as neither lay report accounts for the claimant's marijuana
8   abuse, greater weight is not given."  Tr.  24.  A lay witness's failure to acknowledge known
9   substance abuse creates doubt about the reliability of the statement.  *See Gray v. Comm'r of Soc.*
10  *Sec. Admin*, 365 F. App'x 60, 62 (9th Cir. 2010).  Mr. McClintock's statement contains no
11  indication that he was aware of Mr. Blue's marijuana use.  Tr. 273-8.  The record thus supports
12  the ALJ's finding that Mr. McClintock's testimony about Mr. Blue's limitations does not
13  account for Mr. Blue's drug use.  As such, the ALJ provided a germane reason, supported by
14  substantial evidence, to discount Mr. McClintock's lay witness statement.

15  　　　　However, the same cannot be said about the ALJ's treatment of Ms. McClintock's
16  testimony.  It is true Ms. McClintock did not mention marijuana use in her written statements.
17  But, at the hearing before the ALJ, she testified at some length about Mr. Blue's marijuana use,
18  how it was an "ongoing problem," and how she did not notice behavioral changes in Mr. Blue
19  when he was using marijuana.  Tr. 65-8.  The ALJ made no mention about Ms. McClintock's
20  hearing testimony, and gave no reason to discount it.  As Ms. McClintock's hearing testimony
21  showed she knew about her son's marijuana use and its impact on his behavior, the ALJ's
22  determination that Ms. McClintock's lay evidence should be discounted for failure to account for
23  Mr. Blue's drug use is not supported by substantial evidence.

REPORT AND RECOMMENDATION - 4

Although the ALJ erred, the error is nonetheless harmless.  The lay witnesses in this case described the same limitations that Mr. Blue described in his own testimony.  The ALJ discounted Mr. Blue's testimony on the grounds that it was inconsistent with his treatment records which showed symptom improvement, daily activities, mental status examinations including a full scale IQ of 107, and his presentation during a 2012 mental evaluation.  Tr. 22-3.  Mr. Blue did not appeal or challenge the ALJ's determination that his testimony was not fully credible.  Because the reasons the ALJ gave to reject Mr. Blue's testimony apply with equal force to the lay testimony, any other error the ALJ may have committed in discounting the McClintocks' testimony was harmless.  *See*, *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 693 (9th Cir. 2009); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (When an ALJ properly rejects the claimant's subjective complaints, the reasoning also applies to lay witness statements of a similar nature).

**B.      School Records**

School records are relevant in evaluating the severity of a young adult's impairment.  SSR 11-2p.  This includes the Individualized Education Program (IEP) transition plan that, "describes a student's levels of functioning based on reasonable estimates by both the student and the special education team.  It also identifies the kinds of vocational and living skills the young adult needs to develop in order to function independently as an adult."  *Id.*  The record contains records from Mr. Blue's high school, including a February 2013 re-assessment of his IEP and a January 2013 psycho-educational report.  Tr. 304-13, 530-7.  The ALJ addressed the psycho-educational report but did not specifically discuss the IEP.  Tr. 22.

Mr. Blue contends the ALJ erred in two ways.  He argues the ALJ was required to consider the IEP, failed to "acknowledge" the limitations described in the IEP, and thus

committed reversible error. Dkt. 12 at 8-10. He also argues that the ALJ harmfully erred by failing to include all of the limitations contained in both school reports. *Id.* In specific, he argues that the "educational reports" do not show Mr. Blue would be successful in the work setting described by the ALJ. Dkt. 16 at 5. Mr. Blue argues that the reports instead show he can focus in a quiet room on a good day, requires one-on-one instruction to focus on tasks, cannot work independently "if there is other activity," and has difficulty organizing, being on time, and maintaining attendance. Mr. Blue argues the ALJ failed to account for these limitations in determining his RFC and thus committed reversible error. *Id at* 5-6.

The Commissioner disagrees. The Commissioner argues there is "no significant difference" between the limitations contained in the IEP and the psycho-educational report. As such, the Commissioner contends the ALJ's failure to directly address the IEP was harmless. Dkt. 15 at 7. The Commissioner further argues the ALJ reasonably assessed all of the limitations set forth in the psycho-educational report and IEP, and that the ALJ's RFC determination thus properly accounted for all limitations contained in the school records. Dkt. 15 at 7-8.

Turning to Mr. Blue's first argument, the record shows that the psycho-educational report contains far more detailed information about Mr. Blue's limitations than the IEP. Mr. Blue has not pointed out any specific limitation contained in the IEP that was not contained in the psycho-educational report. Consequently, he has failed to meet his burden to show the ALJ committed harmful error. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). In any event, the IEP contained essentially the same information contained in the psycho-educational report, discussed below. The IEP primarily assessed areas of needed improvement, noting Mr. Blue needed more time to complete school work, Tr. 305; needed help with planning, completing

job applications, and organizing his work Tr. 306-7; preferred hands-on learning; and had limited math solving skills.  Tr. 308.  The IEP also detailed improvements in Mr. Blue's behavior, including a decrease in the frequency of behavioral problem, improvement in complying with requests, and completing and turning in assignments.  Tr. 309.  Given the overlap of information between the IEP and the psycho-educational report, the ALJ's failure to specifically comment on the IEP was harmless error.

   Turning to Mr. Blue's second argument, the record shows the ALJ failed to discuss all of the limitations set forth in the psycho-educational report.  The ALJ found Mr. Blue's school records showed his symptoms "have waned"; that Mr. Blue was described as intelligent, personable and generally polite; that he had good insight in what he read and could formulate complex responses when motivated; that he had difficulty with math concepts and did best working one on one on math problems; that he had difficulty with staying on task in large classrooms but was able to focus in smaller classroom settings; and that Mr. Blue had difficulty completing assignments.  Tr. 22.

   The Commissioner argues that these findings are a reasonable interpretation of all of the limitations set forth in Mr. Blue's school records.  The record does not support this argument because the school records contained other limitations that the ALJ failed to discuss.  Hence there is nothing to show that the ALJ considered all of the limitations contained in the school records, or reasonably construed all of the limitations.  Limitations contained in the psycho-educational report that the ALJ failed to mention include the following:  "Nick has struggled with attendance;" "it is very difficult to get him to work and not draw others off task": "In the resource room, Nick is able to focus when working one on one with the teacher": "if he is in a good space, he can work independently struggles to stay on task if there is other activity going on

REPORT AND RECOMMENDATION - 7

the room"; Tr. 532, "he can be disruptive due to talkativeness and he does not work well independently"; "He seldom completes assignments and needs assistance to both initiate and complete assignments"; He fails to complete work to the "point where verbal prompts are ignored." Tr. 533.

While it is the ALJ's prerogative to weigh the evidence, *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995), the ALJ may not disregard relevant evidence without comment. *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (ALJ must explain why "significant, probative evidence has been rejected."). Here, as the ALJ omitted without comment limitations that were contained in the school records and which were relevant to assessing Mr. Blue's RFC, the ALJ harmfully erred. *See* 20 C.F.R. § 416.945(a) (ALJ must assess all relevant evidence to determine what capacity the claimant has for work in determining a claimant's RFC).

**C.     Evidence that Mr. Blue was Provided a State Funded Caregiver**

In March 2012, Mr. Blue qualified for 103 hours of State funded care to help with his daily needs, including assistance with shopping, budgeting, paying bills, housework, and cooking, as well as reminders to perform basic personal care. Tr. 463-517. Mr. Blue's mother requested this assistance because Mr. Blue "just turned 18 and is still attending high school at least until the end of 2012." Tr. 482. The ALJ noted but gave little weight to Mr. Blue's receipt of these services, "as it is not entirely clear that such services were needed." Tr. 24. The ALJ found that "[a]t the time he received the services, the claimant had always lived at home. It would be reasonable to infer that the claimant's circumstances, particularly his young age and being in high school, significantly impacted the perceived need for services." Tr. 24.

Mr. Blue disagrees, arguing that the need for assistance with basic daily activities is a significant fact that demonstrates his inability to function independently and effectively in a

work setting. Dkt. 12 at 11. Mr. Blue's argument fails for several reasons. First, the fact that he received state funded personal care, alone, is not evidence that Mr. Blue cannot perform work activity and is disabled. For instance a person might receive such personal assistance due to mobility problems, but still be capable of performing gainful work activities. Second, the personal assistance records indicate Mr. Blue has some limitations. However the materials do not contain any functional assessments or opinions as to what this means regarding Mr. Blue's ability to perform gainful work. In other words, Mr. Blue has not shown that he was prejudiced by the ALJ's treatment of the personal assistance materials because he has not shown the materials contain limitations that the ALJ failed to discuss elsewhere.

And lastly, Mr. Blue and the Commissioner spar over what the state grant of personal care services amounts to. Mr. Blue argues that "the fact an 18 to 19 year needs the state to pay for a caregiver shows that he needs more assistance that would generally be provide to other individuals." Dkt. 16 at 6. The Commissioner argues the ALJ reasonably found the services were related to Mr. Blue's young age and transition from living at home to independence. Tr. 24. As both arguments are reasonable, the Court is required to uphold the ALJ's determination. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). Accordingly, for the foregoing reasons, the Court affirms the ALJ's determination that Mr. Blue's receipt of the state services should be accorded little weight.

C.     **Agency Medical Consultant Opinions**

Agency medical consultant Edward Beaty, Ph.D., evaluated Mr. Blue's medical records and provided a functional capacity assessment. Tr. 400. He opined that Mr. Blue was capable of non-complex, multi-step, repetitive tasks, but "[d]ue to Asperger's social s[ymptoms],

REPORT AND RECOMMENDATION - 9

claimant should have limited contact with the general public. In a small group he is capable of adequate work-related social interactions with supervisors and coworkers." Tr. 400. On reconsideration, a second consultant, Dan Donahue, Ph.D., affirmed Dr. Beaty's assessment.[3] Tr. 458.

"State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologist, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i). Given this expertise, an ALJ must not ignore these opinions. SSR 96-6p. The ALJ must weigh the limitations and accept or provide reasons for rejection. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p.

Here, the ALJ purported to give great weight to the consultants' opinions, "as they are consistent with the claimant's reports of doing well in school with good or passing grades, as well as, at home . . . Their medical opinions also adequately account for the claimant's history of distractibility while working around others." Tr. 23. In determining Mr. Blue's RFC, the ALJ incorporated the task and public interaction limitations set forth in Dr. Beaty's functional capacity assessment. Tr. 21. But, rather than include a restriction to work environments with small groups, the ALJ found that "[t]he claimant can perform work without tandem tasks or tasks requiring a cooperative team effort." Tr. 21. Mr. Blue argues the ALJ's RFC determination does not adequately account for Dr. Beaty's small group limitation. Dkt 12 at 12-13. The Commissioner contends that the restriction on tandem and teamwork tasks is a reasonable

---

[3] Dr. Donahue affirmed Dr. Beaty's assessment as written and provided no additional information. Tr. 458. For ease of reading, the remainder of the discussion will attribute the assessment to Dr. Beaty, although the analysis applies equally to Dr. Donahue.

interpretation of the small group limitation assessed by Dr. Beaty. Dkt. 15 at 2.

The record does not support the Commissioner's argument. The record shows that the ALJ specifically approved of Dr. Beaty's opinion as "adequately account[ing] for the claimant's history of distractibility while working around others." Tr. 23. However, there is nothing in the record showing that the ALJ rejected the doctor's opinion that Mr. Blue needed to work in a "small group." The ALJ further provided no explanation or indication that tandem or cooperative tasks accounted for the small group limit. Tr. 23. In fact, in other portions of the written decision, the ALJ referenced a school report that "noted difficulties staying on task in larger classroom setting, but indicated that he was able to focus in a smaller room setting," Tr. 22, and noted that Mr. Blue had moderate difficulties in social functioning as demonstrated by his distractible and disruptive behavior around others in school, but "the claimant has been able to work in a smaller classroom setting." Tr. 20. The ALJ's decision thus makes clear that the ALJ was clearly aware that Mr. Blue had success in smaller settings and significant difficulties working in a larger environment.

Despite Dr. Beaty's opinion and other evidence of record, the RFC, as set forth in the ALJ's written decision, plainly limits Mr. Blue only from performing tasks in tandem or cooperative group team effort, but makes no mention of a small group limitation. Tr. 21. The RFC as written thus allows Mr. Blue to work in any workplace environment—including a large, busy setting—as long as he did not perform tasks in concert with others. Such a workplace is inconsistent with the small group limitation assessed by the agency consultants. As such, the ALJ's RFC determination fails to account for the consultants' functional capacity assessments, despite the great weight given to their opinions by the ALJ.

In sum, the ALJ, erred by failing to incorporate, without comment, Dr. Beaty's small

REPORT AND RECOMMENDATION - 11

group limitation, a limitation that was consistent with other portions of the record.  This error was harmful because the ALJ failed to account for the small group limitation in determining Mr. Blue's RFC.  *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001).  This failure further undermines the ALJ's step five finding that Mr. Blue can perform gainful work.  The Commissioner bears the burden at step five to show Mr. Blue can perform gainful work.  *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).  To meet this burden, the ALJ solicited testimony from a vocational expert through hypothetical questions.  *Id*. at 1100-1101, Tr. 70-71.  "Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant." *Embrey v. Bowen*, 849 F.2d 418, 422-3 (9th Cir. 1988).  When the hypothetical is not supported by the record and does not include all the limitations, the testimony of the vocational expert has no evidentiary value.  *Id*.

In this case, the vocational expert was posed a hypothetical question that failed to include the "small group" limitations.  Because the VE identified jobs based on an incomplete RFC, the VE's testimony has no evidentiary value and the case must be reversed for further proceedings.

**E.    Scope of Remand**

Mr. Blue contends that the Court should remand this matter for an award of benefits.  The Court may remand for an award of benefits where the record is fully developed and additional proceedings would serve no useful purpose; the ALJ failed to provide legally sufficient reasons for rejecting evidence, and if the improperly discredited evidence were credited as true, the claimant would be disabled.  *Garrison v. Colvin,* 759 F3d 995, 1020 (9th Cir. 2014).  The Court abuses its discretion by remanding for further proceedings where the record establishes no basis for serious doubt that the claimant is not in fact disabled.  *Id.* at 1023.

Only in rare circumstances should a Court remand a case for an award of benefits, and

REPORT AND RECOMMENDATION - 12

this is not such as case. *Treichler v. Comm'r of Soc. Sec.,* 775 F3d 1090, 1099 (9th Cir. 2014). Here the ALJ failed to assess certain limitations contained in Mr. Blue's school records and Dr. Beaty's "small group" limitation. Based on the record, the Court cannot say that there is no serious doubt that Mr. Blue is disabled as a matter of law. The Court should thus decline to decide in the first instance exactly what Mr. Blue's limitations amount to, and what testimony a VE might give following a weighing of the evidence. Further proceedings would thus not only be useful but are necessary to address and determine the true extent of Mr. Blue's limitations and whether he can or cannot perform gainful work activity.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's final decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reevaluate Mr. Blue's school records, and Dr. Beaty's opinion that Mr. Blue is limited to work involving small groups; develop the record as necessary; reassess Mr. Blues' residual functional capacity as needed and proceed to step five with testimony from a vocational expert testimony as appropriate.

A proposed order accompanies this Report and Recommendation. Any objection to this Report and Recommendation must be filed and served no later than **May 18, 2015.** If no objections are filed, the Clerk shall note the matter for May 22, 2015as ready for the Court's consideration. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.

REPORT AND RECOMMENDATION - 13

1  Objections and responses shall not exceed eight pages. The failure to timely object may
2  affect the right to appeal.
3  DATED this 4th day of May, 2015.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14